27994.  WILSON-WEESNER-WILKINSON COMPANY *v.*
COLLIER.

458

Decided March 11, 1940. Rehearing denied March 29, 1940.

*Arnold, Gambrell & Arnold, Charles W. Bergman, J. C. Savage,* for plaintiff in error.

*W. L. Bryan, Carlton Mobley,* contra.

Stephens, P. J. A. J. Collier brought suit against Wilson-Weesner-Wilkinson Company, alleging that about May 4, 1936, the plaintiff delivered to the agent of the defendant a gasoline shovel or excavating machine with certain equipment; that this property was then, and previously thereto had been, in the peaceable possession of the plaintiff; that the property was delivered with the understanding that the defendant's agent was authorized to lease the property for a period of two months with the right of renewal for one additional month; that the defendant delivered the property to the Works Progress Administration of the United States, except that some of the equipment was retained by the defendant's agent; that on July 12, 1936, the plaintiff demanded of the defendant the return of the property, and was advised that WPA had leased it for an additional month from July 12, to August 12; that the defendant, through its agent W. C. Caye, leased the property in the name of W. C. Caye & Company, representing to the officials of WPA that the property was owned by W. C. Caye & Company, and that this was done without the plaintiff's knowledge and consent; that the defendant executed a lease in the name of Caye & Company as owner to WPA for three months beginning July 1, and purported to give WPA an option to purchase the property for $5500, on which were to be credited the rental payments from May 12, 1936, until the option was exercised; that the property was of the value of $6500; that the plaintiff had made demand on

the defendant for the return of the property, which demand was refused; that the monthly rental value of the property was $450 per month. The prayer was "that process do issue requiring said defendants to be and appear at the next term of this court to answer petitioner's complaint and that he do have judgment against said defendants." The defendant filed general and special demurrers to the petition. The court sustained two special grounds, with leave to amend. The plaintiff filed an amendment, in which he amended the prayer of the petition by adding at the end the words· "jointly for the return of the property sued for and for the monthly rental value of said property." The defendant renewed its former demurrer and added other grounds.

The court on March 3, 1937, sustained the general demurrer on the ground that the plaintiff was suing for a property judgment. On March 4, 1937, the court passed an order stating that "the above order having been inadvertently entered without giving plaintiff an opportunity to amend, upon consideration by the court and upon oral motion of plaintiff the above order is modified and the plaintiff has ten days leave to amend." To this latter order the defendant filed exceptions pendente lite. On March 12, 1937, the plaintiff amended the prayer of the petition by striking the words "jointly for a return of the said property sued for and for the monthly rental value of said property." The petition in its final form as amended contained an allegation as to the rental value of the property, and prayed judgment against the defendant. The defendant renewed its former demurrers to the petition as amended and added other grounds. All the demurrers to the petition were overruled on April 19, 1937. The defendant filed exceptions pendente lite which were certified on May 10, 1937.

The defendant filed an answer and three amendments thereto in which it denied liability and set up that before delivering the property to it the plaintiff had executed a bill of sale to secure a debt to a Mrs. Pope who undertook to repossess the equipment, and in order to protect the contract with WPA it was necessary to pay off the bill of sale, which the defendant did on January 13, 1937, by paying Mrs. Pope $1404; that certain replacements were necessary on the machine in order to make it serviceable to the WPA; that the defendant had expended about $1500 for that purpose, and it asked to have these sums set off against the plaintiff's claim; and

in a final amendment the defendant claimed as set-offs against the market value of the property sued for, $1200 paid to the plaintiff, together with the sum of $1583.84 being the amount of the bill of sale to secure debt and interest thereon to date, all other items of set-off being stricken. The jury found for the plaintiff $4000 as value, and $4650 as rent, against which the defendant was entitled to a set-off of $1583.84. The court entered a judgment in favor of the plaintiff for "a total of $8650; that is $4000 as value of the machine sued for and $4650 as rent together with future interest at the rate of seven per cent. (7 %) per annum from the date of this judgment, against which Wilson-Weesner-Wilkinson Company is to be credited with a set-off as of the date of this judgment in the amount of $1583.84."

The defendant made a motion for new trial on the general grounds and on 17 special grounds. The motion was overruled, and the defendant filed a bill of exceptions assigning error on the order overruling the motion for new trial and on its bills of exceptions pendente lite.

■ This case has been before this court before. *Collier* v. *Wilson-Weesner-Wilkinson Co.*, 58 *Ga. App.* 44 (197 S. E. 516). It was there held that the evidence demanded a verdict for the plaintiff on the question whether there was a conversion by the defendant. The exceptions pendente lite in the present record were taken before the former trial. These exceptions could have been urged by the defendant in a cross-bill of exceptions when the case was brought to this court before. Since this was not done, the defendant must be considered as having waived all of the exceptions embraced within these bills of exceptions pendente lite. *Hodgkins* v. *Marshall,* supra; *Williams Realty & Loan Co.* v. *Simmons,* 188 *Ga.* 184 (4) (3 S. E. 2d, 580); *Drischel* v. *Drischel,* 51 *Ga. App.* 96 (179 S. E. 577).

■ It can not now be questioned that this was an action of trover in which the plaintiff sued for damages by reason of the unlawful conversion of his property by the defendant. The Code, § 107-105, provides: "The plaintiff in an action to recover personal property may elect whether to accept an alternative verdict for the property or its value, or whether to demand a verdict for the damages alone, or for the property alone and its hire, if any; and it shall be the duty of the court to instruct the jury to render

the verdict as the plaintiff may ·thus elect." The plaintiff, now the defendant in error, alleges in his brief that "at the opening of the trial, when the jury was impaneled, plaintiff's counsel announced that· the plaintiff had elected to sue for the value of the property and hire." This statement is not denied by the defendant, but it is claimed that the ·record does not show what election, if any, was made by the plaintiff. It is true that the record does not expressly show an election. But in view of the fact that the court is by the statute required to instruct the jury to render the verdict "as the plaintiff may elect," it is necessary that the plaintiff make known his election before the court instructs the jury. In this case the court instructed the jury that the only issues ·for them to determine were "the market value of the machine as of the date of the conversion, and the rental value from the date of the conversion, but not prior to August 12, 1936, down to this trial." This raises a presumption that the plaintiff had informed the court that he elected to take a verdict for the value of the property and hire. Unless the contrary is shown, the court will be presumed to have instructed the jury to render the verdict as elected by the plaintiff.

In giving the plaintiff this right of election the plaintiff is given an advantage and the defendant is put to a disadvantage, since the plaintiff may choose that form of recovery which, under the evidence, will yield him the largest amount of damages. But this disadvantage is unavoidable by the wrongdoer who converts to his own use the property of another person.

■ Assuming that the plaintiff had the right to elect a verdict for the value of the property and hire, it was not error to admit evidence as to the rental value of the machine as complained of in · grounds 1 and 2 of the amendment to the motion for new trial.

■ Grounds 3, 4, and 5 of the amendment to the motion for new trial relate to the admission in evidence of a purported copy of an affidavit of W. C. Caye to the effect that Caye· & Company were the owners in fee simple of the equipment which was leased to WPA, and that there were ·no liens or incumbrances against it. The objection was on the grounds that the original affidavit was the best evidence, and it was not shown that the original had ever been lost or destroyed, or that it was a public record which could · not be produced, and because it was not shown that the copy was a correct copy. Mr. Plaster testified that he was estimator or senior

clerk for the WPA from March 15, 1936, to January 20, 1939; that an affidavit "as described by the attorney in his question" was in possession of the WPA; that he saw the original or a duplicate copy; that it purported to bear the signature of W. C. Caye & Company by W. C. Caye, written in pen and ink; that some two months before he looked through the records of the WPA and no such affidavit was disclosed "after a thorough search made by me; the paper handed me is a substantial copy of the affidavit except for the signature which is blank;" that the original affidavit recited that he was the owner; "I don't recall any fee simple;" that the notary was more in the center of the paper; that it was notarized; that to the best of his recollection and belief the signature of the notary was attached. Mr. Barrett testified that he was engineer for the WPA located in the Western Union Building, Atlanta, and was responsible for everything in the office, but Mr. Plaster was responsible for those records for more than a year and a half and was more familiar with them than any person in the office. Merrill Collier testified that he saw on file in the office of the WPA an affidavit purporting to be signed by W. C. Caye; that he was familiar with Caye's signature and had seen him sign his name to letters in his office, and from time to time since, on letters received from W. C. Caye & Company; that he read the affidavit in question in the file; that this document was to his best recollection a copy of what was contained in the affidavit, except that the signature of W. C. Caye appeared on the line middle way of the page on the right, and the signature of the notary appeared in the middle of the page down underneath the matter above. By this testimony sufficient foundation was laid for the introduction of this affidavit. The admission of secondary evidence is a matter of discretion of the trial court, and it can not be said that the court's discretion was abused in this case. Code, § 38-212; *Orr* v. *Dunn,* 145 *Ga.* 137 (88 S. E. 669); *Metropolitan Life Insurance Co.* v. *Vickery,* 49 *Ga. App.* 727 (176 S. E. 815). The objection that the witness Merrill Collier, who testified that he saw the original affidavit and that the signature was in the handwriting of Mr. Caye, did not qualify as a hand-writing expert, can not be sustained. The law allows any one to testify to handwriting who swears that he knows or would recognize the handwriting. Code, § 38-708; *Finch* v. *Hayes,* 147 *Ga.* 147 (93 S. E. 89).

■ In ground 6 of the amended motion it is complained that the court refused to direct a verdict for the defendant. A refusal to direct a verdict is never error. *Reed Oil Co.* v. *Smith,* 154 *Ga.* 183 (114 S. E. 56); *W. & A. Railroad* v. *Michael,* 178 *Ga.* 1 (3) (172 S. E. 66).

■ Ground 7 set up that the court erred in failing to give in charge to the jury a written request as follows: "If the property is of a character that hire may be recoverable the verdict may be for the value of the property on the date of the conversion with hire of the same from that date to the date of the trial, the allowance of hire being in the discretion of the jury." The defendant alleges in this ground that, "said charge was pertinent and applicable to and adjusted to the pleadings and evidence in said case," and that the refusal to give the request amounted to the direction of a verdict against the defendant for the rental value of the property. In view of the former ruling by this court in this case, and under the evidence on the second trial, the plaintiff was entitled to a verdict for the value of the property and its hire during the period from August 12, 1936, to the time of the second trial, and the instructions of the court complained of in grounds 9, 10, 11, and 12, in which the court so informed the jury, were not erroneous.

■ The defendant contends that the Code, § 107-105, does not provide that the plaintiff may elect a verdict for the value of the property and hire. In a case where the defendant has rendered it impossible for the property to be returned to the plaintiff, the redress of the plaintiff would be only partial if it were restricted to the value of the property. It has been held that, under this Code section, the plaintiff may recover the value of the property and hire. *Woods* v. *McCall,* 67 *Ga.* 506; *O'Neill Mfg. Co.* v. *Woodley,* 118 *Ga.* 114 (44 S. E. 980); *Peeples* v. *Felton,* 14 *Ga. App.* 5 (80 S. E. 21).

In *Moultrie Repair Co.* v. *Hill,* 120 *Ga.* 730, 732 (48 S. E. 143), the Supreme Court said: "When the plaintiff in an action of trover elects to take a money verdict, the amount of the recovery can in no event exceed the value of the property with interest or hire from the date of the conversion, or the highest proved value of the property at any time between the conversion and the trial, without interest or hire." In *Smith* v: *Duke,* 6 *Ga. App.* 75 (2) (64 S. E. 292), it was held: "Where the plaintiff in trover elects to take

damages instead of the property, he may recover the value of the property at the date of the conversion, and either hire or interest from that date, according to whether the hire would be worth more than the interest or not."

The defendant objects to the verdict also on the ground that the finding was in two items, for the value of the property and for hire, instead of being in a lump sum. To sustain this contention a number of cases are cited in some of which the plaintiff elected to recover the highest proved value of the property (in which case no interest or hire could be allowed), and others in which the verdict included a separate finding for interest. The cases of "highest proved value" are distinguishable from the case at bar in which the extra finding was for hire or rent as well as for the value of the property.

Following the practice advised in *O'Neill Mfg. Co.* v. *Woodley,* supra, the court in the present case entered judgment for the gross sum of $8650, the amount of property value and hire added together, with the allowance of a credit to the defendant of $1583.84. According to the *O'Neill* case, this removes the objection that the verdict was not for a lump sum.

The defendant contends that it was discretionary or optional with the jury whether to include in the verdict a finding for hire. Ordinarily the amount of damages is within the discretion of the jury, but this does not mean that the jury may capriciously refuse to find anything for an item of damage which the evidence shows to have been sustained by the plaintiff. Certain decisions are cited where it is said that the jury "may find," and it is sought to infer that the finding is optional with the jury. This is a false inference. The word "may" has frequently been held to mean "must." The use of the permissive word "may" is always to be considered in connection with its context and the subject-matter. Since the plaintiff in this case had a right to recover for the hire of the property, it would have been error for the court to charge the jury that a finding for hire was discretionary as contended in ground 7 of the motion for new trial.

■ Complaint is made in ground 8 that the court instructed the jury that there was a conversion, the date of which was left to the jury to decide. In the former decision in this case this court held that the oral option to sell the property to the Government, which

was testified to by Mr. Caye, was not binding on the plaintiff because it was not in writing, the value of the property being in excess of $50. That ruling applies to the matter now under consideration. In the present record there was no evidence that Caye had any written authority to sell the machine to the Government. Notwithstanding such lack of authority, the property was sold and delivered to the Government by the agent of the defendant. Under the evidence on the second trial, and the law declared in our former decision, it was not error to instruct the jury that there was a conversion. As to this ground of the motion, and as to the whole case, it may be noted here that the brief for the plaintiff in error does not argue or rely on this ground of the motion, and does not argue or rely on the general grounds.

The defendant alleges in ground 13 that the verdict was contrary to the evidence because it appeared that the plaintiff had given a bill of sale to Mrs. Pope (Martin) to secure a debt, in which it was provided that delivery of the property to Mrs. Pope was dispensed with, and the same was to remain in the plaintiff's possession, he to have the use and possession until after default in paying the note secured by the bill of sale; that this possession until the note was paid should be that of a bailee for hire, and that he was to have the right to sell and replace, with an article of equal value, any of the property included in the bill of sale. The record in this court of the former trial discloses that this bill of sale was introduced in evidence and came to this court as a part of the brief of evidence. This bill of sale was only a security, leaving the plaintiff in possession of the property with a right to dispose of it. It did not divest the plaintiff of title. At least the equitable title remained in him. He still had the right to rent or sell the property. This amount of ownership was sufficient to enable him to maintain a trover suit against the person who converted the property. *O'Neill Mfg. Co.* v. *Woodley,* supra; *Livingston* v. *Epsten-Roberts Co.,* 50 *Ga. App.* 25, 28 (177 S. E. 79).

The complaint in ground 14 that the verdict was excessive can not be sustained. While the evidence was conflicting as to the value of the machine, it was sufficient to authorize a finding of $4000. The evidence showed that the defendant sold the machine to the United States for $5500, and it was shown that approximately $1500 had been spent by the defendant in changing some

of the equipment. The finding as to rental value was not excessive because the jury could have found from the evidence that from the date of the conversion to the date of the trial was a period of thirty months or more, and there was testimony to show that the rental value was as much as $400 per month.

The remaining grounds of the motion are covered by what has already been stated. It was not error for the court to overrule the motion for new trial.

*Judgment affirmed. Sutton and Felton, JJ., concur.*